UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
SUCHIE CHAWLA,                                    :
                                                  :
                          Plaintiff,              :
                                                  :          **MEMORANDUM AND ORDER**
          -against-                               :          11-CV-6248 (RRM) (VMS)
                                                  :
METROPOLITAN ORAL SURGERY                         :
ASSOCIATES, P.C.,                                 :
                                                  :
                          Defendant.              :
-------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

        Plaintiff Suchie Chawla ("Plaintiff" or "Dr. Chawla") brings this action against

Defendant Metropolitan Oral Surgery Associates, P.C. ("Defendant" or "MOSA") under Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the New York State

Human Rights Law, N.Y. Exec. Law § 296 et seq.; and the New York City Human Rights Law,

N.Y.C. Admin. Code § 8-107, et seq.; among other laws.  Docket No. 1.  Plaintiff, who is

female, alleges that MOSA hired her as an associate oral and maxillofacial surgeon in October

2009; that she was the only female doctor on MOSA's staff; and that MOSA subjected Plaintiff

to a series of adverse employment actions because of her sex.  Id. ¶¶ 11-15.  Among the adverse

employment actions alleged in Plaintiff's complaint are MOSA's reduction of her wages in 2010,

and MOSA's termination of her employment in 2011.  Id. ¶¶ 15, 19-20.

        On September 26, 2013, the Court issued an Order stating that Defendant's counsel

Rosalind Fink could depose Dr. Chawla "for up to three days.  If all relevant topics are exhausted

by the close of the second day of testimony (14 hours), Plaintiff may apply to the Court to

conclude the deposition."  Docket Entry 9/26/2013.  On October 3, 2013, Ms. Fink was in the

midst of deposing Dr. Chawla.  At the seven-hour mark of the deposition, which occurred at

around 2:36 p.m.,[1] Dr. Chawla's attorney Saul Zabell stopped the deposition and walked out of the deposition with his client.  Docket No. 69.  Before this Court is Ms. Fink's motion that sanctions be levied against Mr. Zabell for this conduct.  Id.  Mr. Zabell opposes.  Docket No. 71. Ms. Fink and Mr. Zabell have also filed papers relating to the amount of requested fees and costs.  Docket Nos. 111, 113, 115.

For the following reasons, I **grant in part** and **deny in part** Defendant's motion for sanctions.  I **order** Mr. Zabell to pay Ms. Fink (1) $3,353.75 in reasonable attorney's and paralegal's fees in bringing this motion and (2) $531.36 in costs incurred in bringing this motion and continuing the deposition.  I do not award Defendant a punitive monetary sanction on top of this damages award.

## I.  Background

### a.  The September 26 Order That Ms. Fink Had Three Days To Take Dr. Chawla's Deposition, And Mr. Zabell's Refusal To Continue The Deposition

The Court assumes the Parties' familiarity with the facts bearing on the substance of this action.  See, e.g. Docket No. 95 (briefly summarizing the Parties' positions).  Accordingly, this summary focuses on the procedural background of the instant sanctions motion.  Docket No. 69.

On August 22, 2013, Ms. Fink gave notice to Mr. Zabell that she intended to videorecord her deposition of Dr. Chawla the next day.  On August 23, 2013, Ms. Fink began her deposition of Dr. Chawla, but did not get far, as Counsel disagreed as to whether Ms. Fink could videorecord it; Counsel called the Court for a ruling.  Docket Entry 8/23/2013.  I issued the following Order:

> Plaintiff's deposition may be videotaped . . . (1) Plaintiff and her

---

[1] Ms. Fink reached the seven-hour mark at 2:36 p.m. because this was the second day of deposition.  The first day of deposition had ended abruptly due to a dispute between the Parties over Ms. Fink's wish to videotape the proceeding.  Docket Entry 8/23/2013.

> counsel had notice of the deposition for many weeks. The substance of a videotaped deposition is no different from that of a transcribed deposition. There is no prejudice to Plaintiff with regard to preparation. . . . In the 21st century, it is not unusual, and should not be unexpected, that a deposition will be preserved by the manual typing of a court reporter, and/or by audio and video recording technology.

Id. Mr. Zabell made a reconsideration motion, which I denied. Id. Mr. Zabell appealed my Order to the District Judge. Docket No. 63. The District Judge affirmed my Order and denied Mr. Zabell's request for a protective order over the recorded proceeding. Docket No. 8/23/2013.

As a result of the dispute, Dr. Chawla's deposition was put off to another day. Before that day arrived, I held another telephone conference with Counsel to discuss discovery. Docket No. 68. Among these issues was the length of time Ms. Fink could have to depose Dr. Chawla. Mr. Zabell told the Court that, as Ms. Fink had already deposed Dr. Chawla for "about four and a half hours," he "would probably be willing to give [Ms. Fink] another hour or two." Docket No. 68 at 36:3-6. The following conversation ensued:

THE COURT:

> [Dr. Chawla is] the plaintiff. This is going to be a complete deposition. If it takes three days[,] it takes three days.

MR. ZABELL:
> I'm sorry, Judge, but it's my understanding [that] unless there's another ruling and I don't think the application has been made[, then Ms. Fink] is entitled to take seven hours of deposition.

THE COURT:

> Ms. Fink said she thought that it would take three days. I think that's reasonable in light of . . . how important Dr. Chawla's testimony is. If Ms. Fink can do it more efficiently that would be great but . . .

MR. ZABELL:

Are you telling me, Your Honor, that the Federal Rules of Civil Procedure governing the length of the deposition do not apply here?

THE COURT:

No.  I'm saying Ms. Fink said she thought it would take three days.  That's an application for [three days].  I'm saying if it takes three days[,] it takes three days.

MR. ZABELL:

If that's an actual application I'd like . . . the opportunity to submit opposition to that.

THE COURT:

Tell me right now what your opposition is.

MR. ZABELL:

Well, it's hard for me to determine what my opposition is until the actual seven hours have run.

THE COURT:

If you think at the end of the second day of deposition that Ms. Fink has exhausted all reasonable examination of your client, then you can ask that the deposition be cut off, but . . . given what Dr. Chawla's role is in this, the key person with information of her view, and obviously, this case covers a fair amount of detail with regard to her employment, it seems reasonable that it would take time to get her deposition.

MR. ZABELL:

I don't see any reason why it should take more than the seven hours if Ms. Fink was asking appropriate questions and not wasting her time . . . .

THE COURT:

So I disagree with you.  A deposition can be a slow and painful process . . . but Dr. Chawla is too important of a witness here to cut it off prematurely.  If you see at the end

> of the second day that somehow there's nothing else that
> can be reasonably explored then you can come back and
> tell me that but for now it seems to me . . . that if it takes
> three days[,] it takes three days. That's my ruling.

> MR. ZABELL:

> > But I'm not precluded from raising the issue at the seven
> > hour mark, correct?

> THE COURT:

> > No. At the end of the second day, which would be fourteen
> > hours of testimony, then you can come back. That's it.
> > [Ms. Fink is] getting at least the two days and right now she
> > can have the three days.

> MR. ZABELL:

> > Your Honor, if I just may have that in an order so I can
> > explore that order and perhaps test it. . . .

Docket No. 68 at 36:7-38:15. I memorialized the Order on the docket, stating that "Plaintiff's

deposition may continue for up to three days. If all relevant topics are exhausted by the close of

the second day of testimony (14 hours), Plaintiff may apply to the Court to conclude the

deposition." Docket No. 9/26/2013.

Mr. Zabell did not challenge the September 26 Order before October 3, 2013, which is

when Ms. Fink resumed her deposition of Dr. Chawla. At 2:36 p.m. that day, Mr. Zabell

announced that the deposition was over because Ms. Fink "ha[d] had more than seven hours . . .

." Docket No. 69. Mr. Zabell went on to tell Ms. Fink that if she "fe[lt] the need for more

deposition time," she could write to the Court. Id. at 2 (the deposition transcript). Ms. Fink

reminded Mr. Zabell of the September 26 Order, but Mr. Zabell and his client did not resume the

deposition. Id. at 3. Ms. Fink suggested that the Parties call me for clarification of the

September 26 Order, but Mr. Zabell refused. Id.

### b. Ms. Fink's Sanctions Motion And Mr. Zabell's Reconsideration Motion, Which Mr. Zabell Filed After Violating The September 26 Order

On October 3, 2013, the same day that Mr. Zabell walked out of the deposition with Dr. Chawla in violation of the September 26 Order, Ms. Fink filed the instant motion for sanctions, asking that the Court order Mr. Zabell (1) to pay the full costs of continuing Dr. Chawla's deposition once again, including the costs of transcription and videography; (2) to cover Ms. Fink's attorneys' fees in pursuing the sanctions motion; and (3) to pay a monetary sanction in an amount to be determined by the Court. Id. In filing the motion that day, Ms. Fink ordered nineteen pages of the deposition transcript on an expedited basis to include as an exhibit. Id.

On October 4, 2013, Mr. Zabell filed a motion asking me to reconsider my September 26 Order. Docket No. 70. In that motion, Mr. Zabell argued that he "believe[d] it appropriate to revisit the issue of continuing the deposition at, or immediately prior to the completion of seven (7) hours of testimony," noting that he "advised [the Court] during the last conference [that he] intended to conclude [Dr. Chawla's] examination at the seven (7) hour mark."

I held a telephone conference to hear argument on the sanctions motion and the reconsideration motion. Docket No. 74. Mr. Zabell's first argument with respect to the sanctions motion was that he had not understood the September 26 Order because it stated that Dr. Chawla's deposition "may" proceed for three days, but it did not say that the deposition "must" proceed for that period of time. Id. at 5:21-22. Mr. Zabell went on to say that he remembered telling me at the September 26, 2013 conference that "at seven hours or thereabouts [he] was going to shut [the deposition] down[,]" and that [he had] a distinct recollection of not hearing [me] say no, that's unacceptable." Id. at 5:8-12. Mr. Zabell insisted that, had I ruled that Ms. Fink could depose Dr. Chawla for more than seven hours, he would have "moved before [the District Judge] immediately" to appeal the September 26 Order. Id. at 7:18-19.

Mr. Zabell's second argument was that he was in technical compliance with the September 26 Order because it said that he could apply to the Court to conclude the deposition "[i]f all relevant topics are exhausted by the close of the second day of testimony (14 hours)." Id. at 8:20-23. According to Mr. Zabell, he was therefore justified in walking out on the October 3, 2013 deposition in the early afternoon because, technically, that was the second day of testimony (the first being August 23, 2013). Id. at 8:20-23.

When I read the September 26 conference transcript and the September 26 Order aloud to Mr. Zabell to inquire how he could have misunderstood the meaning of either source, Mr. Zabell proffered a third argument, which was that he "quite frankly thought the fourteen hours was a mistake . . . because we never would have hit fourteen hours at the end – if [he] stayed [at the deposition until 5:00 on the second day. . . . It would have been a numerical impossibility." Id. at 10:23-11:6.

After the conference, Mr. Zabell filed an opposition to Ms. Fink's sanctions motion. Docket No. 71. In that document, Mr. Zabell reiterated the points he had made during the October 7th telephone conference.

On October 31, 2013, I denied Mr. Zabell's motion asking me to reconsider the September 26, 2013 Order. Docket Entry 10/31/ 2013. I noted that my in camera examination of Ms. Fink's 76-page deposition outline and supporting exhibits confirmed that it would have been reasonable for Ms. Fink's deposition of Dr. Chawla to require three days. Id. As Ms. Fink had only had the opportunity to depose Dr. Chawla for seven hours because of Mr. Zabell and Dr. Chawla's premature departure, I ordered Ms. Fink's deposition of Dr. Chawla to continue, once again ruling that if Mr. Zabell believed at the fourteen-hour mark that Ms. Fink had exhausted Dr. Chawla's knowledge of the relevant facts, he could move to have the deposition

closed at that time.  Id.  Mr. Zabell appealed my ruling to the District Judge, Docket Nos. 78-80, who denied the application, Docket Entry 11/14/2013.  Ms. Fink resumed her deposition of Plaintiff on December 17, 2013, and concluded the fourth (and last) day of Plaintiff's deposition on February 10, 2014.

## II.  Legal Standards And Discussion

Several legal authorities are relevant to this sanctions motion, namely, Federal Rule of Civil Procedure ("FRCP") 30(d)(1); Local Civ. Rule 37.3(b); and FRCP 30(d)(2).  My statements during the September 26, 2013 conference with the Parties and the September 26 Order placed on the docket are also relevant.

### a.  FRCP 30(d)(1), Local Civil Rule 37.3(b), The September 23 Order And My Related Statements

First, FRCP 30(d)(1) states that "[u]nless otherwise . . . ordered by the court, a deposition is limited to 1 day of 7 hours.  The court must allow additional time consistent with [FRCP] 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."[2]  Fed. R. Civ. P. 30(d)(1).

Local Civil Rule 37.3(b) instructs attorneys on how to handle disputes arising during depositions, stating that "[w]here the attorneys for the affected parties . . . cannot agree on a resolution of a discovery dispute that arises during a deposition, they shall, to the extent practicable, notify the Court by telephone and seek a ruling while the deposition is still in progress."  Local Civ. Rule 37.3(b).  In the Committee Note to Local Civil Rule 37.3, it is noted once again that "in the context of an ongoing deposition," disputes should be raised with the Court by telephone.  Local Civ. Rule 37.3, Committee Note.

---

[2] FRCP 26(b)(2)(A) provides that "[b]y order, the court may alter the limits in these rules . . . on the length of depositions under [FRCP] 30."  Fed. R. Civ. P. 26(b)(2)(A).

I provided counsel with directions during the September 26, 2013 conference which were summarized in the September 26 Order, which read: "Plaintiff's deposition may continue for up to three days.  If all relevant topics are exhausted by the close of the second day of testimony (14 hours), Plaintiff may apply to the Court to conclude the deposition."  Docket Entry 9/26/2013; see Docket No. 68.

### b.  Mr. Zabell Violated The September 26 Order Issued Pursuant To FRCP 30(d)(1)

I find that the September 26 Order, which I entered pursuant to FRCP 30(d)(1), clearly communicated that Ms. Fink had the right to depose Dr. Chawla for three days, but that Mr. Zabell could apply to conclude the deposition at "the close of the second day of testimony (14 hours)" if, at that time, "all relevant topics [had been] exhausted."  Docket Entry 9/26/2013.  Mr. Zabell's arguments as to the September 26 Order are unconvincing.  I will discuss Mr. Zabell's arguments in turn.  Docket No. 71.

First, Mr. Zabell argues that the September 26 Order only said that the deposition "may" proceed fourteen hours, not that it "must" proceed fourteen hours, before he could petition the Court to terminate the proceeding.  One need only have been present for, or read the transcript of, the September 26, 2013 conference to find the argument meritless.  During the conference, Mr. Zabell posed this question to clarify Dr. Chawla's deposition obligations:  "But I'm not precluded from raising the issue at the seven hour mark, correct?"  Docket No. 68 at 36:7-38:15.  I responded, "No.  At the end of the second day, which would be fourteen hours of testimony, then you can come back. That's it."  Id.

Mr. Zabell next claims that he complied with the September 26 Order because it allowed him to petition to halt the deposition at "the close of the second day of testimony (14 hours)," and, according to Mr. Zabell, his walkout occurred on the second day of Dr. Chawla's deposition

testimony (the first day of her deposition being August 23, 2013). Id. at 8:20-23. The argument

rings hollow because Mr. Zabell stopped the deposition at 2:36 p.m., which is not by any

reasonable interpretation "the close of the . . . day." The argument is also nonsensical because it

ignores the September 26 Order's full phrase, which is at "the close of the second day of

testimony (14 hours)." At the moment Mr. Zabell terminated the deposition, Ms. Fink had only

deposed Dr. Chawla for a total of seven hours and nineteen minutes, nowhere near the fourteen

hours noted in the September 26 Order. Docket No. 77.

Finally, Mr. Zabell argues that he "quite frankly thought the fourteen hours was a

mistake" because, even if the Parties had stayed until 5:00 p.m. on October 3, 2013, Dr.

Chawla's deposition still would have only clocked in at about nine-and-a-half hours, not

fourteen. According to Mr. Zabell, this apparently meant that complying with the September 26

Order was "a numerical impossibility" such that he could ignore it. Docket No. 74 at 10:23-

11:6. This argument is without merit. FRCP 30(d)(1) also explains deposition standards in

similar language, stating that "a deposition is limited to 1 day of 7 hours." Fed. R. Civ. P.

30(d)(1). Indeed, the Advisory Committee Notes to FRCP 30(d) state that

> [i]t is expected that in most instances the parties and the witness
> will make reasonable accommodations to avoid the need for resort
> to the court. The limitation [to 1 day of 7 hours] is phrased in
> terms of a single day on the assumption that ordinarily a single day
> would be preferably to a deposition extending over multiple days;
> if alternative arrangements would better suit the parties, they may
> agree to them. . . . Preoccupation with timing is to be avoided.

Fed. R. Civ. P. 30(d), Advisory Committee Notes, 2000 Amendment. Lawyers facing

scheduling conflicts and discovery deadlines at times break those seven hours up into more than

one day, or continue a deposition past 5 p.m. Mr. Zabell's interpretation is unreasonable in light

of the September 26 Order, FRCP 30, and Advisory Notes.

**c. Mr. Zabell Violated Local Civil Rule 37.3(b) By Abandoning The Deposition Without Consulting With The Court By Telephone To Seek Resolution Of The Dispute**

Assuming, <u>arguendo</u>, that I were to accept Mr. Zabell's arguments (which I do not), I would still find that Mr. Zabell's violation of the September 26 Order during the October 3, 2013 deposition was unjustified. Before Mr. Zabell walked out of the deposition, Ms. Fink asked that the Parties call me to resolve the dispute. Mr. Zabell refused and left, violating Local Civil Rule 37.3(b), which requires parties who cannot agree on a resolution of a discovery dispute arising during a deposition to "notify the Court by telephone and seek a ruling while the deposition is still in progress." Local Civ. Rule 37.3(b). I find Mr. Zabell's abandonment of the deposition to be an intentional violation of Local Civil Rule 37.3(b). Mr. Zabell cannot claim to be unaware of the rule, as he had availed himself of this aspect of this Rule over the course of this litigation. <u>See, e.g.</u>, <u>Docket Entry 8/23/2013</u> (ruling that Ms. Fink could videotape the deposition, and later that same day, the District Judge affirming that decision when Mr. Zabell appealed it).

**d. Mr. Zabell Must Pay Ms. Fink $3,885.11 In Reasonable Attorney's and Paralegal's Fees And Costs Incurred As A Result Of Mr. Zabell's Frustration Of Dr. Chawla's Deposition**

**i. FRCP 30(d)(2) Provides The Legal Authority For An Award Of Attorney's Fees And Costs Award**

Ms. Fink suggests that I look to FRCP 37 as the grounds for sanctions against Mr. Zabell. <u>Docket No. 74</u>. However, FRCP 30(d)(2) is more on point, insofar as it provides that

> [t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent.

Fed. R. Civ. P. 30(d)(2). Courts regularly invoke FRCP 30(d)(2) as a means for analyzing whether sanctions for deposition misconduct are appropriate. <u>See, e.g.</u>, <u>Ramos v. Sears/Kmart</u>, No. 8 Civ. 4969 (DF), 2010 WL 3911487, at *7 (S.D.N.Y. Sept. 13, 2010) (granting sanctions

under FRCP 30(d)(2) for counsel's disruption of a deposition by virtue of his yelling at opposing counsel and the interpreter); Morales v. Zondo, Inc., 204 F.R.D. 50, 53 (S.D.N.Y. 2001) (granting sanctions under FRCP 30(d)(2) because the attorney's conduct "frustrated the fair examination of the deponent"); Unique Concepts, Inc. v. Brown, 115 F.R.D. 292, 292-93 (S.D.N.Y. 1987) (granting sanctions under FRCP 30(d)(2) where "it is hard to find a page on which [counsel] does not intrude on the examination with a speech, a question to the examiner, or an attempt to engage in colloquy distracting to the examiner"); see also Baker v. St. Paul Travelers Ins. Co., 670 F.3d 119, 123 (1st Cir. 2012); Fingerhut ex rel. Fingerhut v. Chautauqua Inst. Corp., Inc., No. 7 Civ. 502 (JTC),  2014 WL 1572387, at *7 (W.D.N.Y. Apr. 18, 2014); Abu Dhabi Commercial Bank v. Morgan Stanley & Co., No. 8 Civ. 7508 (SAS) (JMR), 2011 WL 4526141, at *2, 7 n.31 (S.D.N.Y. Sept. 21, 2011), adopted by 2011 WL 4526137, at *1 (Sept. 29, 2011); Kelly v. A1 Tech., No. 9 Civ. 962 (LAK) (MHD), 2010 WL 1541585, at *20 (S.D.N.Y. Apr. 12, 2010); Ventura Assocs., Inc. v. Int'l Outsourcing Servs., Inc., No. 4 Civ. 5962 (PKL), 2008 WL 2073628, at *3-4 (S.D.N.Y. May 14, 2008); Cochran v. Town of Colonie, No. 4 Civ. 666 (FJS) (GJD), 2008 WL 619187, at *2 (N.D.N.Y. Mar. 3, 2008).

###      ii.   Mr. Zabell Must Pay Ms. Fink's Fees And Costs Relative To This Sanctions Motion Under FRCP 30(d)(2) Because Mr. Zabell Impeded, Delayed And Frustrated The October 3, 2013 Deposition In A Material Sense

Under FRCP 30(d)(2), Ms. Fink has "the burden of showing that the deposition was impeded, delayed or frustrated in any material sense."  Severstal Wheeling Inc. v. WPN Corp., No. 10 Civ. 954 (LTS) (GWG), 2012 WL 1982132, at *3 (S.D.N.Y. May 30, 2012).  FRCP 30(d)(2) "does not require a clear showing of bad faith."  Applebaum v. Nat'l Westminster Bank, No. 7 Civ. 916 (DLI) (MDG), 2011 WL 8771843, at *6 (E.D.N.Y. Oct. 5, 2011).  I find that Ms. Fink has amply shown that Mr. Zabell impeded, delayed and frustrated Dr. Chawla's deposition

on October 3, 2013.  A much more common deposition dispute is that opposing counsel deprives fair examination with allegedly undue interruptions and commentary.  Circumstances such as those may require a multi-factor analysis.  See Boyd v. Univ. of Md. Med. Sys., 173 F.R.D. 143, 147 (D.Md. 1997) (setting for a five-factor test for determining whether to impose sanctions upon an attorney for instructing a witness not to answer); see also Deville v. Givaudan Fragrances Corp., 419 F. App'x 201, 209 (3d Cir. Mar. 25, 2011) (affirming the lower court's imposition of FRCP 30(d)(2) sanctions against an attorney who had testified on behalf of her witness by way of suggestive speaking objections).

Here, Mr. Zabell's conduct mid-proceeding prompted Dr. Chawla to leave, which violated the September 26 Order's direction that Ms. Fink have fourteen hours of examination with Dr. Chawla.  Mr. Zabell's termination of the deposition was more than just a material deprivation of time (approximately fifty percent of the deposition time due to Ms. Fink); it was also a material deprivation of discovery.  See VirnetX Inc.. v. Cisco Sys., Inc., 2012 WL 7997962, at *4 (E.D. Tex. Aug. 8, 2012) ("Due to . . . counsel's termination of the deposition, [the plaintiff] has been deprived of [the] opportunity [to find out what the witness] saw, heard, or did—what the witness thinks . . . .").  For example, my in camera review of Ms. Fink's 76-page deposition outline confirmed that the nature and scope of her planned questions were reasonable in the context of an action such as this one, and that at the time of Mr. Zabell's termination of the October 3, 2013 deposition, Ms. Fink had only asked fifty percent of the questions.  See Craig v. St. Anthony's Med. Ctr., 384 F. App'x 531, 532 (8th Cir. July 19, 2010) (affirming the lower court's imposition of a FRCP 30(d)(2) sanction against an attorney after he made a substantial number of argumentative objections together with suggestive objections and directions to the deponent to refrain from answering questions without a valid justification); S. La. Ethanol, LLC

v. Fireman's Fund Ins. Co., 2013 WL 1196604, at *4 (E.D. La. Mar. 22, 2013) ("The [c]ourt notes that this is the relatively rare case where a deposition was unilaterally terminated. . . . [The court then a]ward[ed] payment [under FRCP 30(d)(2)] of the reasonable attorney's fees and costs which [the defendant] 'incurred' in connection with filing the instant motion to compel a continuation deposition . . . ."); ACF W. USA, Inc. v. Travelers Cas. Ins. Co. of Am., 2012 WL 5838865, at *9 (E.D. Cal. Nov. 16, 2012) ("The Court finds that [the p]laintiff's unilateral termination of [the] deposition was unjustified and improper, and warrants monetary sanctions [under FRCP 30(d)(2)]."); VirnetX Inc., 2012 WL 7997962, at *5 (ordering the defendant to pay the costs of a continued deposition of its witness as a FRCP 30(d)(2) sanction after the defendant unjustifiably terminated the first one). Although the deposition continued several months later, Defendant was forced to bring a motion to compel to have the deposition continue. Defense counsel also incurred costs of having to have a court reporter and videographer reappear and professional effort re-preparing for deposition that was well underway and close in time to the first date of the deposition. All of this effort would have been unnecessary but for Plaintiff's counsel's conduct.

### iii. Mr. Zabell Must Pay Ms. Fink $3,885.11 In Reasonable Attorney's And Paralegal Fees and Costs ($3,353.75 In Attorney's and Administrative Fees And $531.36 In Costs)

Counsel agree that I must determine the attorney's fees award in this case by multiplying the "amount of time reasonably spent by counsel" by a reasonable hourly rate to derive a presumptively reasonable overall fee. Docket No. 113 (Mr. Zabell citing Cover v. Potter, No. 05 Civ. 7039 (GAY), 2008 4093043, at *5 (S.D.N.Y. Aug. 29, 2008), for the proposition that reasonable time multiplied by a reasonable hourly rate is the appropriate calculation method); Docket No. 111 ¶ 14 (Ms. Fink stating that her fee request is the product of her time spent on this matter and her hourly rate). However, Mr. Zabell argues that Ms. Fink has not requested a

reasonable amount of hours worked or a reasonable hourly rate.  Docket No. 113.  In addition,

Mr. Zabell disputes whether Ms. Fink's claimed costs are reasonable.  Id.  I discuss these

disputes in turn below.

### 1.  Mr. Zabell Must Pay Ms. Fink $3,353.75 In Attorney's Fees

#### a.  Ms. Fink Reasonably Spent 6.25 Hours To Remedy Mr. Zabell's Violation Of The September 26 Order, And Incurred 1.45 Hours Of Paralegal Fees As Well

Ms. Fink states that she spent a total of 7.65 hours on this sanctions motions, which she

itemizes as:  .75 hours spent writing the sanctions motion in the aftermath of Mr. Zabell's

October 3, 2013 walkout; 2.45 hours spent preparing for and then actually participating in the

October 7, 2013 conference held by the Court relating to the sanctions motion, activities which

include "conversation[s] with Josh"; .10 hours speaking to the Court regarding the deadline for

her supplemental submission; .80 hours working on calculations for sanctions; 2.30 hours

researching law relating to sanctions; .65 hours working on supplemental papers filed in support

of her fees and costs application; and .60 hours on finishing and serving the supplemental fee-

and-cost-application papers.  Docket No. 111-1 at 2, 6-7.

Mr. Zabell protests that he should not have to pay for Ms. Fink's conversations with the

person identified as Josh in her papers because the Court should not order payment of attorney's

fees for time Ms. Fink spent talking to "paralegals or support staff."  Docket No. 113.  I take Mr.

Zabell to mean that he believes that Josh is a paralegal or support staff.  Ms. Fink attempts to

refute Mr. Zabell's supposition in her reply by stating that she is "not seek[ing] time for

'interaction with paralegals or support staff,'" implying that Josh may actually be one of Ms.

Fink's attorney colleagues, but Ms. Fink does not offer the Court any information regarding

Josh's identity, either.  Docket No. 115.[3]  Whoever Josh is, I find that Ms. Fink is entitled to recover for the 2.45 hours she spent preparing for and attending the Court's October 7, 2013 conference.  I am entitled to "take into account [my] overall sense of [this] suit" in calculating and allocating an attorney's time.  Favors v. Cuomo, -- F. Supp. 2d --, No. 11 Civ. 5632 (DLI), 2014 WL 4065100, at *2 (E.D.N.Y. Aug. 14, 2014).  It is clear to me, from personal observations made while presiding over the October 7, 2013 conference, that 2.45 hours is a reasonable, if not economical, amount of time for Ms. Fink to claim to have invested in preparing for and attending the conference.  At the conference, Ms. Fink had to be able to clearly and cogently discuss (1) the procedural history of this case in order to demonstrate that the Court's September 26 Order was clear; (2) the factual background of the deposition dispute in order to demonstrate that Mr. Zabell violated the September 26 Order; (3) how the remainder of Ms. Fink's planned deposition was relevant to the action such that she was prejudiced by Mr. Zabell's behavior; (4) and the Federal Rules of Civil Procedure to provide a proposed framework within which the Court could consider sanctions.[4]  Docket No. 74.  In light of that list of preparation topics, I find that Ms. Fink's report of 2.45 hours spent preparing for the conference is reasonable and not inflated.  That is all the more true because, notably absent from Ms. Fink's

---

[3] Mr. Zabell filed an objection to Ms. Fink's submission of a reply, stating that I never provided for a date by which Ms. Fink was to file a reply.  Docket No. 114.  Insofar as Ms. Fink filed her reply within two business days of Mr. Zabell's opposition, and because Mr. Zabell does not argue that he would suffer any prejudice by my reading Ms. Fink's reply, I have read and will cite to Ms. Fink's reply as appropriate.  However, I **deny** that portion of Ms. Fink's reply which asks the Court to compensate her for additional time spent on this matter on September 12, September 13 and September 14, 2014.  Docket No. 115.  Part of that time was spent drafting the reply, while Ms. Fink does not make clear how the rest of it was spent.  Although I will consider the reply, as I did not request it, reimbursement is unwarranted.

[4] It is on this same basis that I reject Mr. Zabell's argument that the time Ms. Fink spent writing the sanctions motion and preparing for and attending the October 7, 2013 conference are duplicative and therefore should be reduced.  Ms. Fink had to prepare additionally for the conference.  Docket Nos. 69, 74.

time calculations was the time she spent after the October 7, 2013 conference to organize her

deposition materials so that the Court could review them in camera. Id. at 17:2-19:23.[5] And, of

course, Mr. Zabell's interruption of the October 3, 2013 deposition in violation of the September

26 Order required Ms. Fink to re-prepare for a fourth day of deposition when, absent Mr.

Zabell's behavior, Ms. Fink would have been able to conclude in three days.[6]

In the end, I find Ms. Fink's time entries reasonable attorney work with two exceptions,

which are the .80 hours that she spent calculating her sanctions request and the .60 hours she

spent finishing and serving the supplemental fee-and-cost papers. Docket No. 111-1 at 7. Ms.

Fink may not recover fees at her attorney hourly rate for these tasks because Ms. Fink's legal

expertise was not necessary to do them. As a paralegal could have done this work, Ms. Fink may

only recover fees for these 1.40 hours at the reasonable hourly rate charged by a paralegal. For

the same reason, Ms. Fink may only recover the .05 hours of Brill & Meisel associate Ashley

Normand's time "sav[ing] and print[ing] doc[uments] for [Ms. Fink]" at the paralegal rate as

---

[5] Relatedly, Mr. Zabell complains that Ms. Fink should not be able to recover 2.30 hours for "research and work on declaration re: sanctions" because Mr. Zabell does not believe that Ms. Fink's declaration regarding sanctions contains sufficient legal citations. Docket No. 113. I find Mr. Zabell's protest without merit. I understand research to include the research of substantive and procedural facts. I find it reasonable that Ms. Fink would have spent 2.30 hours preparing a five-page declaration accompanied by eighteen pages of supporting exhibits requiring, among other things, the redaction of time sheets. Docket No. 111. It should also be noted that in Ms. Fink's reply to Mr. Zabell's opposition (for which, it should be noted, she does not seek any reimbursement), Ms. Fink states, and I find this to be true generally of her filings, that she has endeavored to be circumspect in the amount of work she has done on this sanctions motion in order to limit "the amount of time [she] spen[t] on the motion," i.e., the potential trickle-down cost to Mr. Zabell. Docket No. 115.

[6] At times, it seems that Mr. Zabell opposes Ms. Fink's fee application for being a subset of what she might actually request. For example, Mr. Zabell argues that the Court should not award Ms. Fink any time she spent preparing her fee application because, although Mr. Zabell concedes that the Court may order such an award, Ms. Fink did not also seek reimbursement for her preparation for the continued deposition. Docket No. 113. I disagree with Mr. Zabell's logic, which implies that an attorney's fee application is an all-or-nothing proposition. Instead, I find Ms. Fink's restrained approach to this sanctions motion to be a reasonable one.

well.  Docket No. 111-1 at 2.

### b. Ms. Fink's $525.00 Per Hour Rate Is Reasonable, As Is A $50.00 Per Hour Rate For Paralegal Tasks

Ms. Fink has requested that the Court order Mr. Zabell to reimburse her at a rate of $525.00 per hour.  Docket No. 111.  Mr. Zabell objects, suggesting that the Court instead calculate Ms. Fink's services at a rate "far short of this figure."  Docket No. 113.  Although Mr. Zabell does not state the precise hourly rate that he would find acceptable for Ms. Fink, he cites to various cases from this District stating that a law partners' rate tops out at $400.00 per hour. Id.[7]  In fact, more than a year ago some courts in this District have stated that an experienced law partner's hourly rate may reasonably reach $450.00 per hour.  See U.S. v. City of N.Y., 2013 WL 5542459, at *6 (E.D.N.Y. Aug. 30, 2013) (stating that "[r]ecent opinions in this district suggest that reasonable hourly rates" go up to $450 for partners); Hugee v. Kimso Apartments, Inc., 852 F. Supp. 2d 281, 299 (E.D.N.Y. 2012) (stating that reasonable hourly rates for law partners in this District range from $300.00 to $450.00); Rodriguez v. Pressler & Pressler LLP, No. 06 Civ. 5103 (BMC) (JO), 2009 WL 689056, at *1 (E.D.N.Y. Mar. 16, 2009) (finding $450.00 per hour a reasonable rate for a civil rights attorney with seventeen years' experience), adopting as modified, 2008 WL 5731854 (E.D.N.Y. Sept. 11, 2008); Ueno v. Napolitano, No. 04 Civ. 1873 (SJ) (VVP), 2007 WL 1395517, at *10 (E.D.N.Y. May 11, 2007) (finding $450.00 per hour a reasonable rate for a partner with forty-two years of experience and notable achievements during that time).

---

[7] Among the cases cited by Mr. Zabell are Claudio v. Mattituck-Cutchogue Union Free School District, No. 09 Civ. 5251 (JFB) (AKT), 2014 WL 1514235, at *13 (E.D.N.Y. Apr. 16, 2014) (stating that the high end of a partner's hourly rate is $400.00), Sciascia v. Prim Protective Services, Inc., No. 13 Civ. 800 (ADS) (AKT), 2014 WL 940721, at *9 (E.D.N.Y. Mar. 11, 2014) (stating that the high end of a partner's hourly rate is $375.00), and Ferrare v. Professional Pavers Corp., No. 11 Civ. 1433 (KAM) (RER), 2013 WL 1212816, at *5 (E.D.N.Y. Mar. 23, 2013) (stating that the high end of a senior associate's hourly rate is $400.00).

Ms. Fink counters that Mr. Zabell's cited cases, which use attorney-fee rates in this District as a reference for determining Ms. Fink's, should not govern in the context of a sanctions motion, and instead suggests that I look to rates in the Southern District of New York.  Docket No. 115.  Some courts considering sanctions motions in this District have followed what is known as the forum rule, which calculates an attorney's fee sanction award based only on prevailing attorney rates in the district in which the reviewing court sits.  See, e.g., 246 Sears Road Corp. v. Exxon Mobil Corp., No. 09 Civ. 889 (NGG) (JMA), 2013 WL 4506973, at *11 (E.D.N.Y. Aug. 22, 2013); Shukla v. Sharma, No. 07 Civ. 2972 (CBA) (CLP), 2010 WL 8435857, at *13-14 (E.D.N.Y. Dec. 15, 2010).  This is Mr. Zabell's desired approach.  Other courts including the Court of Appeals have not used the forum rule, as Ms. Fink points out.  For example, in On Time Aviation, Inc. v. Bombadier Capital, Inc., 354 F. App'x 448, 452 (2d Cir. Oct. 2, 2009), the Second Circuit endorsed the district court's use of out-of-district rates to calculate the attorney's fees awarded as a Rule 11 sanction.  The On Time Aviation Court explained that "[t]he reasoning behind the calculation of awards under fee-shifting statutes such as the Americans with Disabilities Act and the Voting Rights Act is not . . . precisely analogous [in the sanctions context, as t]he purpose of a Rule 11 award is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses."  Id.; see Robbins v. Myers, Inc. v. J.M. Huber Corp., No. 01 Civ. 201S (LGF), 2010 WL 3992215, at *5 (W.D.N.Y. Oct. 12, 2010) (rejecting the argument that the court apply the forum rule in the context of a sanctions award, because when dealing with sanctions, "the court has discretion to use out-of-district rates in fixing the amount of an attorney's fee awarded as a sanction").  Ms. Fink contends that I should use Southern District of New York rates to determine her compensation in this sanctions matter because her office is located in the Southern District of

New York, her client is located in the Southern District of New York, she bills her client at or

below Southern District of New York rates for lawyers of her experience level, and because

departing from the forum rule would maximize the deterrent effect of a fees award upon Mr.

Zabell.  Docket No. 111 ¶¶ 12, 14, 16, 18; Docket No. 115.

      I agree with Ms. Fink that it is appropriate to depart from the forum rule here for the

reasons she cited, most notably, she bills her client at $525.00 per hour, thus recognizing that in

this case that is the value of her work.  I accordingly find that Ms. Fink is entitled to the $525.00

per hour she requests, which falls in step with the hourly rate charged by similarly experienced

attorneys in similar cases in the Southern District of New York.  See, e.g., Manson v. Friedberg,

No. 08 Civ. 3890 (RO), 2013 WL 2896971, at *10 (S.D.N.Y. June 13, 2013) ("Consistent

precedent in the Southern District reveals that rates awarded to experienced civil rights litigators

over the past ten years have ranged from $250 to $600.").  Ms. Fink has been an attorney for

over forty years, heading the employment practice at law firm Brill & Meisel, where she is of

counsel, for the last twenty.  Docket No. 111-1 at 8.  Ms. Fink estimates that she has counseled

over 3,000 individuals or employers in employment-related disputes in litigations and

arbitrations over the years and declares that the rate at which she bills Defendant in this action is

$525.00 per hour.  Id.; Docket No. 111 ¶¶ 14-16.  In the past, courts have found attorneys with

similar profiles to reasonably charge approximately $525.00 per hour in the Southern District of

New York.  See, e.g., Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 256 (S.D.N.Y.

2012) (finding $525.000 and $500.00 per hour reasonable for two partners who each had more

than twenty years of experience and the action involved some complex, novel issues such that it

was beneficial to have "experienced counsel with such an intimate understanding of the

particular issues at stake"); DeCurtis v. Upward Bound Int'l, Inc., No. 09 Civ. 5378 (RJS), 2011

WL 4549412, at *8 (S.D.N.Y. Sept. 27, 2011) (finding $550.00 per hour a reasonable hourly rate for a partner at a civil rights firm who had been practicing for sixteen years); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (finding $600.00 per hour a reasonable rate for two senior lawyers at a well-known employment law firm).  As I noted, given that Ms. Fink has been billing her client at this rate in this case, it is reasonable for Mr. Zabell to pay Ms. Fink at this rate as well for the unnecessary deposition disruptions discussed above.

Finally, I must determine a reasonable hourly paralegal rate in the Southern District of New York at which I allow Ms. Fink to recover the 1.45 hours of administrative work I discussed above.  In the Southern District of New York, "the market value for paralegals' time ranges from $50.00 to $150.00 per hour depending on experience levels."  Access 4 All, Inc. v. Mid-Manhattan Hotel Assocs. LLC, No. 13 Civ. 7995 (JMF), 2014 WL 3767009, at *3 (S.D.N.Y. July 31, 2014).  In the absence of information on the paralegal's background and experience, courts in the Southern District of New York have "reduced proposed paralegal rates . . . ."  Id.  Here, there is no proposed paralegal rate for me to reduce or, for that matter, any background-and-experience information to review, as the paralegal in question is a hypothetical person.  Accordingly, I will set the hourly paralegal rate at the bottom end of the range, $50.00 per hour.

### c.  Conclusion

In light of the foregoing, Mr. Zabell must pay Ms. Fink $3,353.75 in reasonable attorney's and paralegal fees.  This figure represents $3,281.25 (the 6.25 hours Ms. Fink reasonably expended on this matter, multiplied by her $525.00 hourly rate) plus $72.50 (the 1.45 hours a paralegal would have reasonably spent doing the administrative work done by Ms. Fink and Ms. Normand, multiplied by a $50.00 hourly rate).

2.  **Mr. Zabell Must Pay Ms. Fink $531.36 In Costs That Ms. Fink Incurred As A Result Of Mr. Zabell's Violation Of The September 26 Order**

Ms. Fink also seeks to recover some of the costs she has incurred as a result of Mr. Zabell's violation of the September 26 Order, which include (1) the $101.46 cost of the expedited portion of the transcript of the aborted October 3, 2013 deposition, which Ms. Fink appended to the sanctions motion she filed that same evening, Docket No. 111-1 at 1; (2) the $534.95 cost of the court reporter who Ms. Fink had to hire to finish Plaintiff's three-day deposition on February 2, 2014, the fourth day of the proceeding, id. at 5; and (3) the $322.15 cost of the videographer who Ms. Fink had to retain to conclude the final hour of Plaintiff's three-day deposition on February 2, 2014, the fourth day of the proceeding, id. at 4. Mr. Zabell objects to paying for the expedited transcript and the videographer. Docket No. 113. I agree that Ms. Fink's requested costs should be reduced, but not for the reasons argued by Mr. Zabell.

Mr. Zabell states that Ms. Fink was not justified in ordering an expedited transcript of the October 3, 2013 deposition such that he should not now be obligated to pay the cost. Id. I disagree. Local Civil Rule 37.3(b) provides that where attorneys "cannot agree on a resolution of a discovery dispute that arises during a deposition, they shall, to the extent practicable, notify the Court by telephone and seek a ruling while the deposition is in progress." Local Civ. Rule 37.3(b). Ms. Fink pleaded with Mr. Zabell to comply with Local Civil Rule 37.3(b) and call me for a ruling. Docket No. 69 at 2-3. Mr. Zabell refused, and in the process forced Ms. Fink to squander her preparation for the deposition as well as the momentum achieved in that day's examination by Ms. Fink of Plaintiff. Id. Now, Mr. Zabell takes issue with the urgency with which Ms. Fink ordered the deposition transcript so that she could ask the Court in writing to resolve the dispute after Mr. Zabell refused to choose the Court's free, real-time deposition

dispute resolution option.  Id.; Docket No. 113.  I find that Ms. Fink acted properly in ordering

the transcripts on an expedited basis.  At the time of Mr. Zabell's walkout of the October 3, 2013

deposition, fact discovery was slated to close on November 12, 2013, and even if that were not

the case, as I mentioned above, Ms. Fink had an interest in mitigating the interruption of

Plaintiff's deposition.  Docket Entry 7/15/2013.[8]  Furthermore, it must be said that Ms. Fink

limited her expedited-transcript order to nineteen pages of what was an hours-long proceeding.

Docket No. 111-1 at 3.  I therefore find that Ms. Fink's filing of an urgent motion for sanctions

and to compel was reasonably necessary, and the manner in which she went about it was plainly

tailored to minimize expense.

Next, Mr. Zabell objects to paying the $322.15 cost of the videographer's fourth day of

work filming Plaintiff's deposition.[9]  Docket No. 113.  He states that courts have denied

applications to use a videographer during deposition.  Id.  The problem with Mr. Zabell's

argument is that Mr. Zabell already opposed Ms. Fink's wish to videotape the deposition earlier

in this litigation, and I denied his motion.  Docket Entry 8/23/2013.  Mr. Zabell appealed my

ruling and the District Judge affirmed my Order.  Docket No. 63; Docket Entry 8/23/2013.  The

matter has therefore been long settled.  As a result, because Mr. Zabell knew that Ms. Fink had

secured the right to videotape three days of deposition, to the extent that Mr. Zabell's bad

---

[8] Indeed, resolution of the dispute did occur promptly.  On October 7, 2013, I held a conference
with the Parties regarding the dispute.  Docket No. 74.  On October 31, 2013, I denied Mr.
Zabell's motion that I reconsider allowing Ms. Fink three days of deposition.  Docket Entry
10/31/2013.  On November 14, 2013, the District Judge affirmed my Order.  Docket Entry
11/14/2013.  On December 17, 2013, Ms. Fink deposed Plaintiff for a third day.  Docket No. 111
¶ 9.

[9] Mr. Zabell apparently concedes that he must at least pay the cost of the court reporter on the
fourth day, as he makes no argument with respect to this matter.  Docket No. 113.  Even if Mr.
Zabell had objected to paying this cost, I would find his position without merit for the same
reasons I explain above in the context of the videographer dispute.

behavior is the sole cause of the fourth day, it would be illogical to say that Ms. Fink should have to absorb that extra cost.

However, I find that Ms. Fink's requested videographer costs must be reduced for another reason, which is that it appears that Ms. Fink would have incurred some portion of the videographer's bill even if the deposition had been limited to three days. For example, the $534.95 videographer's bill shows that $375.00 is attributable to the videographer's two-hour minimum appearance fee; $150.00 is attributable to the creation of the video and the transcript; and $9.95 is attributable to a shipping fee. Docket No. 111-1 at 5. Mr. Zabell should have to pay the $375.00 minimum-appearance fee and the $9.95 shipping fee because, had it not been for his disregard of the September 26 Order, Ms. Fink would not have had to pay the videographer to come back for a fourth day or to separately ship a fourth video. Id. By contrast, Mr. Zabell should not have to pay for the $150.00 fee for the creation of the deposition video because Ms. Fink expected to pay this cost anyway, as the point of her sanctions motion is that she wanted to finish the deposition on the third day, but Mr. Zabell took it to the fourth day.

The same analysis applies to the court reporter and necessitates a reduction in Ms. Fink's requested costs. The $322.15 court reporter's bill shows that $277.20 is attributable to printing pages 775 to 830 of the fourth day's deposition transcript; $35.00 is attributable to the reporter's appearance fee; and $9.95 corresponds to shipping and handling of the transcript. Docket No. 111-1 at 4. Mr. Zabell should have to pay the $35.00 appearance fee and the $9.95 shipping costs, but he should not have to pay for the $277.20 printing of the deposition transcript which, like the deposition video, Ms. Fink would have herself bought anyway.

In sum, I find that Mr. Zabell must pay Ms. Fink $531.36 in costs that Ms. Fink incurred as a result of Mr. Zabell's violation of the September 26 Order. This represents the $101.46 cost

of the expedited transcript of the October 3, 2013 deposition; the $35.00 appearance fee charged

by the court reporter for the fourth day; the $9.95 shipping and handling fee charged by the court

reporters for mailing a fourth transcript; the $375.00 appearance fee charged by the videographer

for the fourth day; and the $9.95 shipping and handling fee charged by the videographer for

mailing a fourth video.

### 3. Conclusion

I find that Ms. Fink is entitled to $3,885.11 in reasonable attorney's and paralegal's fees

and costs, which represents $3,353.75 in reasonable attorney's and paralegal fees and $531.36 in

costs. I decline to impose an additional monetary fine because I find that requiring Mr. Zabell to

pay Ms. Fink's reasonable attorney's fees and costs stemming from his October 3, 2013

misconduct is sufficient to encourage Mr. Zabell to comply with his obligations as an officer of

the Court going forward.

### III. CONCLUSION

For the foregoing reasons, I **grant in part** and **deny in part** Defendant's motion for

sanctions. I **grant** Ms. Fink's motion that Mr. Zabell pay $3,885.11 in reasonable attorney's and

paralegal fees and costs, but I **deny** Ms. Fink's motion to recover the $150.00 she paid for

deposition video creation and the $277.20 she paid for deposition transcription because Ms. Fink

expected those costs absent Mr. Zabell's disruption of the deposition. I also **deny** Ms. Fink's

motion for a punitive sanction above and beyond the attorney's and paralegal fees and costs

award just mentioned. I **order** Mr. Zabell to remit payment to Ms. Fink within fifteen (15) days

of today's date.

Dated: Brooklyn, New York
September 19, 2014

_Vera M. Scanlon_
_____
VERA M. SCANLON
United States Magistrate Judge